UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:19-cv-322 |
| v. | ) ) | |
| WILKINS MICAWBER, LLC, | ) ) | |
| Defendant. | ) | |

COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Scottsdale Insurance Company ("Scottsdale"), by its attorneys, states and alleges as follows:

INTRODUCTION

1.  This is an action for a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 *et seq.*, to determine a real, substantial, and justiciable controversy between the parties concerning their respective rights and obligations, if any, under an insurance contract in connection with certain underlying claims, as described more fully below.

PARTIES

2.  Plaintiff Scottsdale Insurance Company is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in Scottsdale, Arizona. Scottsdale has been authorized to do business and is doing business through licensed surplus-lines agents in the State of Indiana.

3.  Defendant Wilkins Micawber, LLC ("Micawber") is a limited liability company organized and existing under the laws of the State of Indiana with its principal place of business

in East Chicago, Indiana.  Each of the members of Micawber is a resident and citizen of the State of Illinois.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the present case pursuant to 28 U.S.C. §§ 1332(a) and (c) because this is an action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum and value of $75,000.

5. Venue is properly laid in this District and Division pursuant to 28 U.S.C. §§ 1391(b) and (c).

## INSURANCE CONTRACT

6. Micawber entered into a liability-insurance contract with Scottsdale for a policy period between November 21, 2017, and November 21, 2018 (the "Policy").

7. On information and belief, the original of the Policy is in the possession, custody, or control of Micawber.  (A true and correct copy of the Policy, as maintained in Scottsdale's files, is attached as Exhibit A.)  The Policy is subject to all its terms, conditions, exclusions, and limitations, which are incorporated by reference as if set forth here in full.

8. The Policy lists Micawber's corporate address as 910 S. Michigan Ave., Unit 1904, Chicago, IL 60505.  In the Policy's schedule of locations, the sole designated premises is identified as 4400 Homerlee Ave., East Chicago, IN 46312 (the "Site").  On information and belief, Micawber acquired title to the Site in December 2017.

9. In its application for the Policy (a true and correct copy of the application, as maintained in Scottsdale's files, is attached as Exhibit B), Micawber described the nature of operations at the Site as "14 acre lot – commercial property."  (*See* Exhibit B at p. 2.) Additionally, Micawber answered "no" to the following application question:  "Do/have past,

present or discontinued operations involve(d) storing, treating, discharging, applying, disposing, or transporting of hazardous material? (e.g., landfills, wastes, fuel tanks, etc.)." (*See id.* at p. 7.) Based on Micawber's representations, the Policy was written to describe Micawber's business as "vacant building" and indicates that the premium was calculated for an exposure class of "vacant buildings – not factories."

UNDERLYING CLAIMS

10. On information and belief, on or about January 22, 2018, the Indiana Department of Environmental Management ("IDEM") sent a letter to Micawber's registered agent in Indiana and its members in Illinois titled "Notice of Liability." (A true and correct copy of IDEM's letter, as maintained in Scottsdale's files, is attached as Exhibit C.)

11. In the Notice of Liability letter, IDEM stated it had "determined that a release or the threat of a release of hazardous substances and petroleum has occurred at the Site." (*See* Exhibit C at p. 1.) Based on this finding, IDEM made demands on Micawber for "implementation of response actions," for "reimbursement of IDEM's costs incurred to date in investigating the Site and for reimbursement of costs that IDEM will incur in the oversight and administration of the Site." (*See id.* at p. 2.)

12. To support the demands on Micawber, IDEM's letter described the background to its findings as follows:

> IDEM has conducted an investigation to identify current and past owners of the Property and current and past operators of facilities at this Property…. An E-mail from you dated November 30, 2017 states that Wilkins Micawber LLC, registered in Indiana is a partnership LLC owned by Christina Primbas and Nick Gilbert. Nick Gilbert has stated that he has hired Dragan Vjestica as an environmental consultant to act on his behalf indicating that Nick Gilbert is responsible for environmental decisions at the site.
>
> IDEM has documents provided by the Indiana Finance Agency through the Brownfields Section that demonstrate that the past owners and/or operators used

> materials containing hazardous substances and petroleum found at the Site. The hazardous substances and petroleum documented at the Site include chlorinated solvents and waste oil in drums and containers that are still located on the property.
>
> IDEM has established an administrative record of the documents and information that serve as the basis for IDEM's determination of liability for each PRP…. The record may be found on the Virtual File Cabinet at http://vfc.idem.in.gov/ under Site #0000675.

(*See* Exhibit C at p. 2.)

13. In describing potential defenses and exceptions to liability under state law, IDEM's letter explained:

> A PRP [potentially responsible party] claiming to be a bona fide prospective purchaser, an innocent landowner, a contiguous property owner, or some other defense bears the burden of proving that it meets the conditions of these protections against landowner liability….
>
> A PRP who believes it has a valid defense … or that it meets exceptions to liability … and/or meets the definition of a Bona Fide Prospective Purchaser pursuant to [state or federal law] must submit a written briefing regarding the defense and exceptions that the PRP is claiming, along with all supporting documentation, to the IDEM attorney listed [therein] within 60 days after the date of this Notice.

(*See* Exhibit C at p. 4.) On information and belief, Micawber has not submitted any such briefing to IDEM as of the present time.

14. The demands made in IDEM's Notice of Liability letter, as well as any related correspondence or demands to Micawber, are referred to as the "Underlying Claims."

15. On or about July 26, 2018, counsel for Micawber informed Scottsdale of the Underlying Claims and requested coverage under the Policy. (A true and correct copy of the notice letter, as maintained in Scottsdale's files, is attached as Exhibit D.)

16. On August 10, 2018, Scottsdale acknowledged receipt of the correspondence from Micawber's counsel and advised that it was investigating the availability of coverage. (A true

and correct copy of the acknowledgement email, as maintained in Scottsdale's files, is attached as Exhibit E.)

17.     During the course of investigating Micawber's request for coverage, Scottsdale learned that, on or about July 25, 2018, the environmental consulting firm SME provided a Site Characterization Report to IDEM on behalf of Micawber.  (A true and correct copy of the report [without appendices], as available from IDEM's Virtual File Cabinet, is attached as Exhibit F.) SME explained that its "assessment team prepared this [report] to summarize available historical reports from the manufacturing and warehouse facility located at [the Site] and to present SME's interpretation of the environmental contamination extent based on historical field observations and laboratory supplied data." (*See* Exhibit F at p. 1.)  Among the historical materials identified by SME (and discussed in Exhibit F) were three reports that SME itself had prepared prior to Micawber's acquisition of the Site:  a Phase I environmental site assessment report from March 2016; a Phase II environmental site assessment report from June 2016; and a further site investigation report from August 2016.  (*See id.* at pp. 4-7.)

18.     Before discussing the details of the historical reports involving the Site, SME's Site Characterization Report described the background of the Site as follows:

> The Property is currently owned by Wilkins Micawber, LLC and has no active tenants.  The north building on the Property reportedly was most recently utilized for storage and recycling….  The main building was most recently occupied by several tenants, one of which used the southern portion of the building for storage of steel.  The center of the building was most recently utilized for recycling of aluminum automobile parts and included a smelter and drum storage area.  A former tenant most recently used the northern portion of the main building for storage and construction of firing range materials….
>
> Historically, the far southern portion of the Property was initially developed by 1915 as the Edwards Valve and Manufacturing Company for the manufacture of brass valves.  Over time, the business expanded northward to consist of eleven buildings including a warehouse, multiple pattern and assembly shops, a forge

> shop, laboratory, foundry and machine shop…. By 1959, numerous buildings on the property had been combined to form one large manufacturing building….
>
> The occupational history of the Property is complex, with multiple tenants simultaneously occupying and operating a variety of commercial and industrial businesses throughout the history of the Property …. Historic tenants at the Property include, but are not limited to: building fabricators, steel fabricators, metal part manufacturers, repair shops, a pipe distributor, and various teaching/social programs.

(*See* Exhibit F at p. 1.)

19. From its assessment of nine historical reports addressing environmental conditions at the Site (dated between August 2004 and September 2017), SME identified nine areas of potential concern. (*See* Exhibit F at pp. 8-11.) In the conclusions and recommendations of the Site Characterization Report, SME stated that, from the historical records, it was able to determine that a "chlorinated solvent plume has been identified in soil and groundwater at the Property" at concentrations in excess of state residential and/or industrial screening levels. SME explained that this "plume consists of various chlorinated solvents (primarily TCE, cis-1,2-DCE, and vinyl chloride) and extends from the central portion of the main building to the east/southeast." (*See id.* at p. 12.) SME also stated that the historical reports confirmed the presence of metals contamination in soils above state residential and/or industrial screening levels in various locations at the Site. Those locations included the operational area north of the main building, a former underground-storage-tank area in the southwest part of the Site, and the vicinity of a concrete-walled trench on the western portion of the Site. (*See id.*)

20. As referenced in paragraph 16 above, Scottsdale promptly acknowledged receipt of the notice letter and request for coverage from Micawber's counsel. (*See* Exhibit E.) In light of Scottsdale's continuing investigation, counsel for Scottsdale sent a letter to Micawber's counsel on October 29, 2018, confirming Scottsdale's agreement to participate in Micawber's

defense of the Underlying Claims subject to a full and complete reservation of rights. (A true and correct copy of the reservation-of-rights letter, as maintained in Scottsdale's files, is attached as Exhibit G.) Among other things, Scottsdale reserved the right to withdraw from continued participation in Micawber's defense as well as the right to seek declaratory relief with respect to Micawber's request for coverage under the Policy.

## COUNT I

21. Scottsdale realleges and incorporates by reference paragraphs 1 through 20 above as if set forth here in full.

22. This is a cause of action for a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 *et seq.*, to determine a real, substantial, and justiciable controversy between the parties concerning their respective rights and obligations, if any, under the Policy in connection with the Underlying Claims.

WHEREFORE, plaintiff Scottsdale Insurance Company prays that the Court determine the parties' respective rights and obligations under the Policy in connection with the Underlying Claims, enter judgment declaring that Scottsdale has no obligation to defend or indemnify Micawber under the Policy in connection with the Underlying Claims, and grant such other and further relief as the Court deems just, equitable, and proper.

Dated:  August 27, 2019.    Respectfully submitted,

Riley Bennett Egloff LLP

<u>Kevin T. Bennett</u>
J. Mark McKinzie, No. 15024-29
Kevin T. Bennett, No. 34506-49
500 North Meridian Street, Suite 550
Indianapolis, IN 46204
P: 317-636-8000
F: 317-636-8027
mmckinzie@rbelaw.com
kbennett@rbelaw.com

*Attorneys for Plaintiff*
*Scottsdale Insurance Company*

## INDEX

Exhibit A -   Scottsdale Policy CPS2755343 (effective 11/21/2017)

Exhibit B -   Micawber Insurance Application (dated 11/20/2017)

Exhibit C -   IDEM Letter to Micawber (dated 1/22/2018)

Exhibit D -   Micawber Letter to Scottsdale (dated 7/26/2018)

Exhibit E -   Scottsdale Email to Micawber (dated 8/10/2018)

Exhibit F -   SME Site Characterization Report [without appendices] (dated 7/25/2018)

Exhibit G -   Scottsdale Letter to Micawber (dated 10/29/2018)